Diversified Real Estate Trust v. Acis Capital Management, et al., Brigade Capital Management, and Highland CLO Funding. And I see we have Mr., can you pronounce your last name for me? Yes, Your Honor, my last name is Sebade. Sebade, I see you reserved three minutes for rebuttal, and you can begin whenever you're ready, Mr. Sebade. Thank you, Your Honor. May it please the Court, I represent the appellant, NexPoint Real Estate Investment Trust. Our thesis is pretty simple, or the thesis of our case is fairly straightforward. The appellees are registered investment advisors, and like so many investment advisors in the United States, they manage and have complete control over millions and sometimes billions of dollars of investors' funds. If I may, I come in to check. Counsel's voice is not coming through. Can you pull the mic closer? I'm trying to just lean in. Maybe you can raise the podium just a little bit. Maybe it's as high as you can. I think we've maxed it out. I'll try to lean in if that helps. Great, thank you. Sure. The appellees are managing a series of pooled investment funds, generally referred to as the ACES funds there. Six of them, they were numbered one through six, and they use their position to pocket monies, millions of dollars for themselves, that would have gone to the equity holders in those funds, one of which includes my client NexPoint. Section 2064 of the Advisors Act, and by extension Rule 2064-8, say that they aren't allowed to do that. They're not allowed to use their position to use manipulations and schemes to pocket investors' money. Let me see if I can narrow what the issues are, Mr. Beatty. I don't think you're alleging, correct me if I'm wrong, you're not alleging there was any misconduct in the formation of the PMA, right? That's correct, Your Honor. And correct me if I'm wrong, it's clear that the misconduct you're alleging is all a breach of the PMA. You would agree with that? I would say some of the conduct is a breach, but it goes beyond merely breaching. It goes into the intent to self-deal. Some breaches could have been negligent. Some breaches don't necessarily rise up to the point where we need to- You allege the failure to obtain the BEX execution of loan trades violates the PMA, right? Yes. And you allege that they failed to meet technical thresholds imposed by the indenture, which would incorporate into the PMA, right? That's correct, Your Honor. And you allege that they purchased poor credit quality assets as part of a scheme to circumvent the technical requirements, right? We do allege that. We don't necessarily allege that that directly violates the PMA, except to the extent that the intent behind it was in violation of their Advisor's Act duties under 206. All right. If, in fact, each of those things violated some provision of the PMA, how can that be performance that involves the contract under Section 215? Wouldn't that be, by definition, non-performance under the contract? Well, Your Honor, it depends on which part of the contract we're looking at. The indenture requires them, and by extension the PMA, requires them to go out and buy these assets to purchase and trade and sell. So they are performing the contract. We don't allege that they didn't do that part of the contract. The other part of the contract puts restrictions and limitations on or conditions on what they're allowed to buy. So when they breach those portions of the indenture and the PMA, those would be the things that you just mentioned. And that's non-performance, right? That's not performance under the contract. That's non-performance. They didn't do what they're supposed to do under the contract, right? Well, under those provisions, I would agree, Your Honor, that's them violating the contract. I don't know. I mean, I'm thinking of performance the way we're using it as something a little bit more active versus benchmark or standard-based. Their performance under the contract is they have to actively manage the fund, and they did actively manage the fund. So they were performing, and in that performance- But under your definition, if you're including those things as part of a Section 215 violation, by your definition, every breach would be potentially actionable, right? Every breach of the agreement, you would say, is actionable under Section 215? Not necessarily, Your Honor. For the reason- What's your definition? What would we be holding is the scope of 215 under your approach? I think we would have to prove the additional elements of Section 206, that it had to be part of a scheme or manipulative scheme, fraudulent scheme, deceptive scheme, that they benefited themselves. There could be lots of violations, even of those provisions, that weren't a part of such a scheme. They could have been negligent. There could have been market conditions that caused it. Okay, but even any alleged fraud, no matter how many provisions of the agreement that it violates, you would say would be actionable under 215, right? To the extent it violated 206, I believe that's what 215 states. Under what definition of, even going back to the common law, when we talk about void contracts and illegality, there is no interpretation under the common law that would extend voiding a contract to that type of framework. At best, the common law is a dispute about if it requires illegal conduct, it's void, versus whether it allows for illegal conduct. But we're not even in that world. We're in the world where it doesn't allow this type of conduct. It's prohibited under the agreement. So there's no version of the common law that would support your understanding of when a contract is void for illegality, unless I'm missing something. Well, Your Honor, as we argued in our brief, we do believe there's a corollary under the common law that says that when you have a contract that's not, wasn't formed or wasn't void in the formation, wasn't an illegal contract, but was performed in a way that was unlawful, then the rights of the person tendering performance are void. They don't get to point to their contract and say, well, I tendered performance, so therefore you need to pay me. But that's where the party is trying to enforce the contract. Well, not necessarily. I think here the way I would structure it is my clients go to the appellees and said, you know, you have to restore the money you took because you took that money in violation of 206, and therefore you can't point to your contract or the rights under your contract to fees and to whatever else they're allowed to collect as a defense to that, which was how the Supreme Court in TAMA and Transamerica kind of framed the issue, and we think that it fits here the same way. But the cases you rely on there are, I believe, they all tended to stem from the party asserting their rights, not defending. Where here the defendants are defending. I guess that's obvious. But the parties alleged to have breached or to have performed illegally are defending against that claim, not attempting to invoke their rights under the contract. Well, they're in a unique position, which is they have the money already, and so they just pocket it. They don't need to enforce their contract. So in a way, they've been forced through self-help, and our claim is to go back to them and say, we actually need the money back, and they're going to point to their contract as they've done and say, nope, we're allowed to collect those monies as fees for XYZ reasons. So that's why it's all kind of lumped together as a single cause of action. But in Transamerica, the Supreme Court recognized that it's the contract that's void, but the actual cause of action is incident to voidness arising under equity. So here, restitution, disgorgement. Why this holding that you're urging would not be inconsistent with how we interpret a very similar language in Oxford University, as well as under the Securities Exchange Act and Zerman. It seems to me that it's a very similar language in both of those statutes. I don't see any material difference, unless you can point to a material difference. So why wouldn't this be completely consistent with our analysis of similar language under both those other statutes? The main reason, Your Honor, is because those cases rest on the making of the contract. They did not look to the performance of the contract. I would point, Your Honor, to- In Oxford University, we said, Intervenors have not identified any provision of the indenture whose performance would violate the ICA. It looks like we looked at performance and what was required under the contract, right? Yes, Your Honor, except- Under the Zerman, we said, under Section 209B of the Exchange Act, only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts. And when we talk about unlawful transactions, we're obviously talking about performance. So I'm not sure you can say we didn't look at performance in those cases. Your Honor, the language there, I agree with you. However, if you look at the facts of the case, the actual allegations and violations that those two cases were dealing with, they were dealing with contracts that were alleged to have been made in violation, especially under 29A, which I would point out under Perlstein was the holding that Judge Friendly was dissenting against. It was a contract made in violation, and Judge- So you're saying this is dicta? Is that what you're suggesting? I'm saying it may have been broader than what the actual facts before the court were, and so we're supposed to start with the language of the statute, and the language of the statute uses the word or performance, and then says the rights are void as to the person who engaged in the violative performance. And so this would be the first case in front of the court that actually held that much. I would point the court to a Fifth Circuit case that looked at the Exchange Act language and held the way we are holding, which is regional properties, 678 F. 2nd. 552 Pennsite 560. And in that case, the court, again, looking at the Exchange Act, held that you have to look at the performance separately because otherwise you're reading words such as necessarily or required into the statute, and that language isn't in the statute. All right. You have three minutes in rebuttal. Thank you. Thank you. All right. I see we're going to hear from Mr. Adams. Your Honor, we moved the time around a little bit. Oh, I see it's- Yes. Great. Your Honors, may it please the Court, Blair Adams on behalf of ACES Capital Management, LP, and Josh Terry. I want to start by responding to a question that Judge Bianco just asked about whether the ruling that's being sought here would be inconsistent with Oxford University Bank. Actually, the last time I was in this courtroom was in that case. I wrote the briefs for that case. That case was absolutely on all fours with the facts of this case, albeit under the ICA rather than the IAA. In Oxford University Bank, you had a CDO issuer, very similar to ACES CLO 6 in this case, that had been alleged to have sold unregistered securities to investors that were not qualified purchasers and therefore violated the Investment Company Act. We had one below on the basis that there was no private right of action under Section 47B. We lost that argument in front of this Court. But the Court nonetheless ruled in our favor on the basis that the sales of those unregistered securities to non-qualified purchasers were not transactions that were called for under the contract or even permitted by the contract. In fact, they were prohibited by the contract. And that's exactly the situation that we have in this case. The PMA does not require a performance that would violate the federal fiduciary duty standard in Section 206 of the ICA. And in fact, it contains provisions prohibiting violation of that standard and prohibiting the exact conduct that is alleged in this case by next court. If you respond to his argument that not all their allegations would constitute a breach, do you want to respond to that? Your Honor, I think that's incorrect. In fact, each and every one of their allegations of conduct that breaches allegedly the IAA, they also allege as a basis for bringing their breach of the Portfolio Management Agreement claim. And if we go through each one, next point claims that ACES violated the IAA by failing to achieve best execution. The PMA at Section 4, which is in the record at A754, requires the Portfolio Manager to seek best execution on trades for ACES CL06. So a violation of the best execution responsibilities would violate both the IAA and the PMA. They allege that ACES charged improper expenses to ACES CL06. Section 9C of the PMA, which is at the record at A762, limits the types of expenses for which the Portfolio Manager can seek reimbursement from ACES CL06. And if they were charging improper expenses, it would not just be a violation of the IAA, but of that provision of the PMA. As for the Weighted Average Life Test and the Weighted Average Rating Factor, which they say ACES caused a violation of, as Your Honor pointed out, PMA Section 3, record A750, requires the Portfolio Manager to comply with all terms and conditions in the indenture, which include restrictions on the purchase of assets by ACES CL06 that do not maintain or improve the collateral quality tests, which include the WAL and WARF tests. So the whole thing you're urging is that in order to have a claim for the rescission of the advisory contract, it has to be formed in violation of the IAA, or the terms require performance in violation of the IAA, right? Require or provide for performance in violation of the IAA. What about, to me, the common law is not quite as clear as has been suggested in the briefs. It seems to be that, for example, Williston on contracts that tries to summarize the common law, does allow potentially that a contract that permits or accommodates illegal conduct could also be void. I know in your brief you say, well, that doesn't matter here because these provisions prohibit the conduct. But in terms, can you address the common law? Yes, Your Honor. As you've said in your hypothetical, or in your question, that's not the case that we're dealing with here, because everything that they allege to have violated the IAA does, in fact, they allege violate the PMA. But, as to the question of whether there could be circumstances in which a contract accommodates rather than requires illegal conduct, and that illegal conduct could be a basis for voiding the contract. I think the answer to that question, Your Honor, depends on the specific contractual terms. Where a party engages- Actually, you gave a hypothetical in your brief that made me think about this. You said, if you're not registered at the time of the formation of the contract, that would be a problem. That would make it voidable, right? Void, right? Correct. But you said it also, in performance, it could be void if, at some point years later, you became unregistered, that that would be problematic and would make it void, right? Isn't that what you suggested? I think that's correct, Your Honor. And in that instance, it's not requiring that you be unregistered. There's nothing in the contract that's requiring the person to be unregistered. It just allows, maybe, in the contractual language, it doesn't address once the contract is formed that you have to stay registered. So would that be void or not void? Well, Your Honor, I think the contract, the performance of the contract does require that parties comply with laws and regulations. So to the extent that registration is required, I think a lapse in that registration by the investment advisor would breach the contract. It would also violate the IAA in that circumstance. But in that scenario, I do believe that performance, continued performance of the contract would be a violation of the IAA, and that would bring into play Section 215. But that's not the situation we have here, because we're not talking about a incapacity issue. We're talking about conduct claims. And those conducts, the improper conduct that's alleged is conduct that's specifically prohibited by the terms of the portfolio management agreement itself. I think it's also worth noting that in the common law, where we're seeing cases about accommodating illegal conduct and seeing that there are, like, for example, the main case I think they cite is Tochi, where they build a garage of some sort, and they didn't have a proper permit for it. So the building of the garage was determined to be illegal, and they wouldn't enforce the payment obligation to the builder. That is a circumstance where a court is invoking the principle that the court will not affirmatively enforce illegal contracts. And so, your honor, this goes to your question earlier as to whether those cases involved questions of restitution or clawing back funds. That's not what those cases involve. They involve a slightly different principle, which is that courts will not enforce the right of parties that arise from illegal conduct. The principle that I think is codified in Section 215 is a simpler principle, which is that you cannot create a contract that violates the act. And in fact, the act has very specific provisions, like in Section 204, that is titled advisory agreements that restricts the type of compensation, for example, that you can provide for in an advisory agreement. And if you were to create a contract that provided for compensation that was not permitted under the IAA, then that would be an instance where Section 215 was invoked. But not where generalized conduct is alleged to breach both the PMA and the IAA. All right, thank you. Thank you. May it please the court, Samir Degasen on behalf of Defendant Brigade. Brigade fully agrees with ACES that Section 215's private right of action is limited to illegal contracts, and that's a sufficient basis to reject plaintiff's claims against Brigade 2. But regardless of how the court answers that question, there's an even more straightforward basis to dismiss the claims against Brigade. Plaintiff concedes that neither it nor CL06 has any contractual relationship with Brigade at all. Instead, it alleges that Brigade serves as a sub-advisor to ACES. So the only basis for any claim against Brigade would be to extend Section 215's cause of action to contracts between investment advisors and their own third-party service providers. That is flatly contrary to Transamerica and the Supreme Court's modern implied right of action jurisprudence. Transamerica makes clear that Section 215 contains a limited right of action permitting only rescission and restitution of the consideration given under the contract, less any value conferred by the other party. That remedy thus necessarily extends only to contracts to which the plaintiff has paid consideration and has a right to seek rescission. But here, plaintiff has paid no consideration. It is not a party to any of these agreements between ACES and Brigade. And so there's necessarily nothing for it to seek any restitution of. Instead, what plaintiff is really seeking is to Brigade is damages allegedly flowing from violations of the IAA. And that is exactly what the Supreme Court said was unavailable under Section 215's limited remedy. And we're aware of no court anywhere that has ever held that the Section 215 cause of action reaches defendants for whom there is just no contractual relationship at all with the plaintiff. And you can look through the complaint. The closest allegations that are most relevant to Brigade are ones that make clear that there's no contractual relationship. Paragraph 52, for example, makes clear that Brigade charged ACES 15 basis points as a fee. And then 4849, which are the most relevant allegations as to what Brigade did. It said we provided advisory services as well as back and middle office functions. We assisted in the negotiation execution of documents. We identified potential assets. Those are all just us acting as a service provider to ACES. There is no contractual relationship whatsoever with. Next point, we're a complete stranger to the PMA. And the PMA itself at JA 782 says that no party is a third party beneficiary of this arrangement.  Excuse me a second. Mr. Dagerson, assuming that we agree at this report that Nextpoint failed to state a claim on the Section 215, am I correct to understand that Nextpoint would be free to pursue any claims it may have against you in the state court? Nextpoint is free to do that. Nextpoint is currently doing that. There's a parallel state court action, all of the pending claims that were dismissed in the district court. It is, in fact, pursuing those right now. And that sort of just underscores, I think, this is a really limited remedy, which is seeking a specific thing, which is rescission of contracts with people that you actually have and restitution of the fees that you paid. But of course, there are plenty of other avenues, including state law, that allow you to go after alleged fraud. And where are these activities pending? In the Superior Court in New York, Your Honor. Supreme Court. Supreme Court. As we call it. Right. Not Supreme, but we've always thought of it as very important. Can I trouble you for one last question? Absolutely. How would you describe the relationship between your client, between Brigade and ACES? We are a sub-advisor to ACES. We were actually appointed by the bankruptcy trustee after ACES went into Chapter 11 bankruptcy. So we have the sort of imprimatur of the bankruptcy court. And we're a sub-advisor to them. So we, I mean, I think the allegations are sort of correct to say we provide back and middle office functions and we assist in their asset management. But we have a separate relationship with ACES. We have no relationship whatsoever with Nextpoint. All right, thank you. Thank you, Your Honor. Okay, Mr. Sebade, you have three minutes in rebuttal. Thank you, Your Honors. I think it's important, at least for our argument, to recognize that when we look at section 215, sorry judge, let me lean in. When we look at section 215, nothing in there suggests that if something is a violation of the advisor's agreement, it therefore cannot be actionable under section 215. The statute says any violation of any statute or rule or order under the Advisor's Act gives rise to the voiding of the contract. And that, I think, is a key distinction that we have from the appellees in terms of how section 215 should be construed. In terms of it being a limited remedy, we completely agree. We cannot sue and are not suing for the diminution in value, for example, of the interest that my client had in ACES 6. We are only suing for the either disgorgement slash restitution remedy that was discussed in the Transamerica case. The genealogy of the common law frame that's been put on section 215, as I mentioned before, arises from Judge Friendly's dissent in Pearlstein. But he was dissenting against a section 29A finding that a stipulation was made in violation. And then somehow that got erected throughout the years into a totalizing frame of that being the only thing that section 215 stands for. And they didn't look at the language. And then Omega comes along and sort of backs in with the common case law. And I wanted to- You've mentioned the language at the close of your primary remarks. And I'm struck by the fact that 215 is entitled validity of contracts. And it doesn't start by talking about conduct. The section B starts every contract made in violation or which is performed in certain ways, right? The point is that 215 is very clearly focused on the contract and not on the behavior. I agree, I agree, Your Honor. And I think the way we look at that is probably a similar way, which is, it says every contract that involves the performance in violation of the Advisor's Act is void as to the rights of the person who engaged in the violation. But that's the contract involving it as opposed to external to or not contemplated by the contract. Your Honor, I agree that there's two ways that that word involved can go, even under our construction. But to say it's limited to being contracts that require the way they've said, all those are already handled under the other parts of section 215. A contract that overtly requires it or that by its terms, as Judge Bianco pointed out, requires it because the person is unregistered, those are contracts that are made or those are contract provisions that are void under section 215A. You have the problem now of surplusage. There would be no reason to add the rest of the language to the idea. And finally- 30 seconds on Brigade. It does seem to be that there are no alleged, there's no alleged contractual relationship of any type with Brigade, right? Well, Your Honor, what we've alleged is that they're an investment advisor advising a fund, ACES VI, and they get paid from the fund directly, or their calculation is directly to the fund. I agree, there's not direct privity with ACES VI or under the indenture. But they get paid directly out of the assets under management of the fund. So just as much as anybody else, the money that they take directly arises or comes out of that. And I'd like to also point out that to the extent we're looking at Exchange Act law, this court's decision in McMahon, 65 F3rd 1004, pin site 1051, held that section 29A of the Exchange Act rendered void. The no action clause, the contractual limitations for bringing an Exchange Act case, we would argue that to the extent that that language is the same as 215A, there are contractual bars to us bringing suit under the Advisors Act likewise. Thank you. Thank you. All of you, we'll reserve the decision. Have a good day.